27882. DYAR v. STOVALL.

ARGUED MAY 14, 1973 — DECIDED MAY 31, 1973.

*Zachary & Segraves, W. E. Zachary, Sr.,* for appellant. George Arthur Stovall, *pro se.*

MOBLEY, Chief Justice. This appeal by a mother of a minor boy, about 12 years old, against the father, is from a judgment finding that the evidence did not show any substantial change in condition materially affecting the welfare of the child, and ordering that custody remain with the father, subject to the visitation rights of the mother.

The record shows that by agreement of the parties in a divorce action custody of the child was placed in the mother in June, 1962. In December, 1962, the father obtained custody of the child because of a change of

circumstances affecting the welfare of the child. The father has had primary custody since that time. The mother has custody two months in the summer and two weekends each month. There has been frequent litigation between the parents through the years concerning the custody of the child, in all of which the father has been successful.

In the present case the mother contends that the father has neglected the boy's teeth. She introduced testimony of an orthodontist to whom she took the boy in 1968. The orthodontist has been treating the boy for a hereditary condition of his jaw, in which the lower jaw outgrew the upper jaw, preventing the upper and lower teeth from fitting together properly. The orthodontist testified that treatment for this condition is difficult and unsatisfactory, and that treatments would have to be continued until the boy is mature. The mother has already paid approximately $1,100 for the treatments. The orthodontist stated that the boy's teeth were badly decayed when he first saw them.

The father testified that the boy's teeth were not in too bad shape until the mother "started messing with them." He stated that the mother took the boy to the orthodontist without consulting him, that he offered to pay for the treatments, but she said that she would gladly pay for them.

The mother testified in regard to the boy's lack of proper medical care, inadequate clothing, and lack of personal hygiene training while in the care of the father. This testimony was contradicted by evidence for the father of his proper care for the physical health and personal appearance of the boy.

The mother retained custody of the boy after his last summer vacation with her, and placed him in a school in DeKalb County, where she lives. One of his teachers in this school testified that the boy had a severe reading deficiency, that his reading was on a first and second

grade level, although he was in the sixth grade. The mother asserts that the school in which she placed him in DeKalb County has special classes for students with deficient reading ability, which the Hartwell School, where he has been attending while living with his father, does not have.

The reading teacher in the Hartwell School testified that the boy was reading at a high fourth grade, or low fifth grade level. She stated that he seemed to be worried since he had come back to Hartwell, and had not done as well with his studies. She testified that under the program in the Hart County Schools he would receive special remedial reading help beginning with the next six weeks period. She stated that his IQ was approximately average.

The mother asserts that the boy is denied religious training while in the custody of the father. The father testified that his family attended a named church, but that they had not attended for about three or four months because his wife had to have an operation, after an accident, and has not been able to attend church.

There was evidence that the homes of both parents were suitable homes.

When questioned by the trial judge, the boy stated that: he did not know which parent he would prefer to live with; he got along with his stepmother and his stepfather; both parents were good to him and he loved both of them. When the judge asked him which school he preferred to attend, he stated, "I guess to Hart County school."

"A judgment fixing the custody of a minor child is conclusive between the parties, and the principle of res judicata is applicable, unless a material change in circumstances substantially affecting the welfare of the child is made to appear. In determining whether or not there has been such a change, the trial judge is vested with a discretion which will not be controlled by this court unless it is abused. . ." *Madison v. Montgomery,* 206

Ga. 199 (1) (56 SE2d 292); *Harrison v. Kelly,* 209 Ga. 537 (2) (74 SE2d 546).

We have detailed only a minor portion of the extensive evidence heard by the trial judge. Under all of the evidence, we can not say that the trial judge abused his discretion in continuing the custody of the boy in his father, who has had his care since infancy under previous judgments favorable to him.

*Judgment affirmed. All the Justices concur.*